[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petition filed by the Commissioner of the Department of Children and Youth Services (DCYS) alleges that Danielle, date of birth June 5, 1987, was abused; and was neglected by being denied proper care and attention physically, educationally, morally or emotionally and by being permitted to live under circumstances or conditions injurious to her well being.
It is the petitioner's burden to prove one or more of these allegations by the fair preponderance of the evidence. On August 3, 1991, the court entered an ex parte order of temporary custody (OTC) after a 96-hour hold put into effect by DCYS. That OTC remains in effect to the present time.
The court heard evidence from Dr. Mantell, a licensed clinical psychologist, the court-appointed evaluator; the child's therapist, Ms. Hauck; Ms. Kristoff and Ms. Sinapi DCYS social workers; Rhonda Nye, the child's first foster mother; Mr. C., the father, Ms. Smith, the paternal grandmother, and Mrs. C., the mother; together with documentary evidence including Dr. Mantell's report, a certified copy of Mr. C.'s felony conviction in Rhode Island; a St. Francis Hospital report of an examination of Danielle; Mr. C.'s Rhode Island arrest record and victim statements and Dr. Kessler's report concerning his examination of the alleged victims. Also, the social studies of DCYS; and various hospital records and nurses' notes concerning Danielle's care and treatment while in the custody of father.
At the outset, the court wishes to make clear, in determining whether the petitioner met her burden of proof, that the court specifically gave no weight to Dr. Kessler's CT Page 3043 reports and the statements of the witness-victims which were admitted as part of the Rhode Island arrest record. The court also gave no credence to the New York materials, those having been excluded from evidence.
The court has the responsibility of determining the credibility of the various witnesses and determining the weight to be afforded their testimony.
The foster mother, Rhonda Nye, testified to statements made by the child to her as to sexual activity; she also testified that the child was sexually preoccupied, acted out sexually and displayed a sexual knowledge beyond her years, and the court finds her evidence credible. The court also finds Dr. Mantell's testimony credible and gives great weight to it. Dr. Mantell's findings, opinions and conclusions were based on detailed and thorough interviews of the child, her parents, and the foster mothers. Dr. Mantell is an experienced practitioner in this area and concluded that the child was exposed to sexual abuse and inappropriate sexual behavior and activity. Ms. Hauck's opinion and findings the court also finds credible. Ms. Hauck has a B.S. degree in psychology and is working toward her doctorate in psychology at the University of Connecticut. She has almost completed her master's thesis, and has a clerkship with, and works under the supervision of Dr. McGeehan, a licensed clinical psychologist. Her conclusions were based on a large number of perceptive interviews and observations of the child, and the use of anatomical dolls, during which she concluded that the child actually experienced sexual abuse. The court was not persuaded by suggestions in cross examination or argument that the child's statements, knowledge and behavior were either suggested by the therapist or others, or were gained from a view of her parents' sexual activity. And, even if it were the case that the child gained this knowledge from a view of her parents' activity — it appears that she was allowed to view such activity far more frequently than could be explained by mere inadvertence. The court also had before it the child's statements to Ms. Kristoff regarding her sexual activity with her father. The child's statements to Nye, Kristoff and Hauck were substantially consistent; moreover, they appeared to be voluntarily and naturally made, without coaching or prompting. Despite the inconsistency respecting the "blood" that respondents point to, the child's statements rang true.
The respondents also attacked the underlying credibility of the child's statements concerning sexual activity made to the social worker, foster mothers and her therapist. The respondents have stressed that the child often told demonstrable lies to Ms. Nye, some of which were about CT Page 3044 sexual activity between herself and other children in the Nye household. The fact remains that with respect to the sexual activity with her father, the child was consistent in her identification of him as the participant and consistent in her description ("bumping butts") of the activities. It is immaterial whether there was actual penetration, as this case is not a criminal prosecution, where the proof of penetration is an essential element of a particular degree of sexual assault. Although sexual abuse is not specifically defined in General Statutes Section 46b-120 or Section 17a-101 (b), there can be no question that sexual abuse includes within its penumbra all of the types of sexual contact defined in the sexual assault statutes. See Section 53a-65.
Other than the father's testimony, there was no evidence that directly contradicted what the court finds to be a consistent claim by the child of a pattern of sexual abuse by the father.
The court concludes from the weight of the petitioner's evidence that the child's sexual behavior and knowledge was clearly beyond her age of four. It is also clear to the court that she was not making up these experiences; and I find on the record that they were not fantasy and could have been learned only from adults, namely, her father. Moreover, the reliability of the child's statements to Ms. Nye, Ms. Kristoff and the therapist is corroborated by father's admissions to Dr. Mantell and Ms. Kristoff, and the parents' statements on the stand, as to bathing and taking showers with the child; allowing the child to walk into the parents' bedroom and observe sexual intercourse on a number of occasions; allowing the child to observe toileting functions, menstruation and the like. The court also finds that neither mother nor father made any effort to mitigate the effects of the child's observation of sexual intercourse, but allowed it to recur time and again.
Counsel for the respondent father strenuously urges the court to find that the St. Francis Hospital record proves that no sexual abuse or molestation of Danielle occurred. However, that report does not help the respondent. It is uncertain what psychological evaluations or tests were performed on the child. There were also no examinations or evaluations of the parents done by the examiner.
It does not "confirm or refute" the petitioner's claim that sexual abuse occurred. Although a physical examination was performed, the report's conclusion does not even refute the claim that the child was sexually abused in a physical manner. The report therefore has little, if any, CT Page 3045 probative value.
The paternal grandmother's testimony is also not helpful to the respondents. The time frame during which she babysat for Danielle did not coincide with the time frame of the abuse. Moreover, although she testified that she would not support her son or cover up for him if he did wrong, her actual testimony belied this stance, as she minimized and attempted to explain away her son's serious felony assault convictions, for which he served time in prison. Also, she herself is a victim of long-term domestic violence and abuse (as related by her son to Dr. Mantell) which may have affected her perceptions of his conduct.
The court also finds that mother played a substantial role in this scenario, and when she participated in sexual activity with Mr. C., she also made no effort to shield Danielle from it, nor to shield Danielle from the other inappropriate activities that the father carried on in front of the child. Moreover, neither of the parents showed any recognition or appreciation of the extent of the risks to which they exposed this young, very impressionable and hyperactive child by their activities.
The court also notes that father has been convicted of one count of felony assault on a child and one count of felony assault with a dangerous weapon. I also recognize that the original sexual assault charges were plea bargained to felony assault charges of children to which the father pled nolo contendere. The court also recognizes that other claims of sexual and physical assault respecting other children were also made against father. Mother was aware of this, and knowing this, mother allowed Danielle to remain with father totally unsupervised, even without her supervision, inadequate as it was. Mother's testimony showed inconsistent behavior on her part in the past. To obtain a restraining order, she made statements under oath to the Superior Court that Mr. C. had physically abused her and the children. She gave similar statements to a family relations officer and to a DCYS social worker, which she now claims were untrue. The mother also testified that she does not believe that Danielle was abused by Mr. C. when she was not in the home, despite all of the evidence to the contrary. The court finds her testimony less than credible, and concludes that at this time, mother is unable to protect Danielle.
Based on the credible testimony and evidence, the court finds by more than the fair preponderance of the evidence, that Danielle was sexually abused, both physically and emotionally, by the acts of omission and commission of CT Page 3046 both parents and that she was being permitted to live under conditions and circumstances injurious to her well being, and that she was being denied proper care and attention, emotionally and morally, and therefore, further finds that she was neglected and abused within the meaning of General Statutes Section 46b-120 and Section 17a-101, and adjudicates Danielle C. to be a neglected and abused child. The uncared for allegation is dismissed as the petitioner did not sustain her burden of proof on that claim. Also, the claim that the child's immunization schedule was neglected is — dismissed. The request of the petitioner for an order of temporary custody of the child Ashley is denied, as the petitioner neither pled this claim for relief, nor sought to amend its petition to include it. However, the evidence adduced during the trial of the father's past treatment of children and his seeming domination over mother, gives the court concern over Ashley. The court, pursuant to its powers under General Statutes Section 46b-121, deems it appropriate to issue orders hereinafter stated for Ashley's protection.
The court makes the following findings:
(1) It was unnecessary for DCYS to make reasonable efforts to prevent or eliminate the need for removal of the child from her home;
(2) DCYS had made reasonable efforts to make it possible for the child to return to her home;
(3) Continuation in her home is contrary to her best interests and welfare.
Therefore, based on all of the evidence, the court finds that it is in Danielle's best interests and welfare that she be committed to the care, custody and control of the Commissioner of the Department of Children and Youth Services for eighteen (18) months and it is so ordered. The order of temporary custody shall remain in effect in the event of an appeal, together with the orders hereinafter stated.
The Commissioner shall file a treatment plan and status report within ninety (90) days hereof.
The parents and the Commissioner shall agree on expectations which shall, at a minimum, include the following, which are made orders of this court:
(1) Neither parent shall remove Ashley from the State of Connecticut for more than 96 hours without prior notice to the Commissioner. The parents shall allow the CT Page 3047 Commissioner or her representatives to make announced and unannounced visits to their home and allow access to Ashley, and, in the event the parents separate, mother shall have temporary custody of Ashley and shall not allow father to have unsupervised contact with the child until further court order.
(2) The parents shall notify the Commissioner of any changes in address or telephone number.
(3) The parents shall have as a minimum the visitation rights they now have, which shall be supervised.
(4) The mother shall participate in counseling which shall focus on the following issues: improvement of her parenting skills, judgment and ability to protect her children.
(5) The father shall participate in counseling for sexual offenders; and for anger, violence and emotional control.
(6) The Commissioner shall continue Danielle in therapy and refer the parents to counseling resources.
(7) The matter of child support shall be referred to the Department of Administrative Services, Bureau of Collections.
Dated at Willimantic this 2nd day of April 1992.
TELLER, J.